ELY v. MURRAY & TREGURTHA CO.

(Circuit Court of Appeals, First Circuit. November 13, 1912.)  No. 986.

1. MARITIME LIENS (§ 65*)—EVIDENCE.

The provision of Act June 23, 1910, c. 373, § 1, 36 Stat. 604 (U. S. Comp. St. Supp. 1911, p. 1192), that "it shall not be necessary to allege or prove that credit was given to the vessel," does not bar proof that whatever was furnished was furnished on the mere credit of the owner, but it meets the presumption that there is no lien for materials furnished on the order of the owner, as there is a presumption in favor of a lien when the articles are ordered by the master under appropriate circumstances.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 103; Dec. Dig. § 65.*]

2. MARITIME LIENS (§ 27*)—REPAIRS—EVIDENCE.

Act June 23, 1910, c. 373, § 1, 36 Stat. 604 (U. S. Comp. St. 1911, p. 1192), has removed all the difficulties about burden of proof with reference to supplies furnished seagoing vessels on the order of the owner personally, also with reference to credit being specifically given to the vessels which were considered in The Iris, 100 Fed. 104, 40 C. C. A. 301, and other cases of that class.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 41–45; Dec. Dig. § 27.*]

3. ADMIRALTY (§ 1*)—JURISDICTION.

The libelee claimed to recoup on account of an alleged breach of warranty with reference to the engine; but the amount really involved was found to be too unsubstantial to occupy the attention of a court in admiralty, within the practice stated in Munson v. Steamship Co., 102 Fed. 926, 928, 43 C. C. A. 57, and Saxlehner v. Siegel Cooper Co., 179 U. S. 42, 21 Sup. Ct. 16, 45 L. Ed. 77.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 1–17; Dec. Dig. § 1.*]

Appeal from the District Court of the United States for the District of Massachusetts; Frederic Dodge, Judge.

Suit in admiralty, in rem, by the Murray & Tregurtha Company against an open gasoline launch; James R. Ely, claimant. Decree for libelant, and claimant appeals. Affirmed.

Following is the opinion of the District Court by Dodge, District Judge:

The libelant is a Massachusetts corporation, and its business, carried on in Boston, consists in the manufacture or construction of gasoline engines and of small craft of various kinds wherein such engines are used.

By its libel, filed August 3, 1911, it asserts a lien upon a 28-foot open gasoline launch in the amount of $1,734.85, claimed to be due it for furnishing and installing a gasoline engine therein under a contract with the owner of the launch.

James R. Ely, of New York, having claimed the launch as her sole owner, admits in his answer that the libelant sold him on or about April 4, 1911, a gasoline engine to be installed in the launch, which was at the time in New York. He denies that anything is due the libelant, avers that the libelant agreed to build and deliver the engine on or before May 16, 1911, that it failed to comply with this agreement, did not deliver the engine until July 7, 1911, and that the engine, when delivered, was not such as to fulfill the agreement. He alleges damages, caused by the libelant's failure to comply with the contract, to an amount greater than the damages claimed in the libel.

On January 27, 1912, during the hearing on the libel and answer, Ely filed a motion to dismiss the libel for want of jurisdiction in the court. The ground for dismissal alleged is that "on the pleadings and evidence the sub-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ject-matter of said libel is not within the jurisdiction of this court." But the sale to Ely by the libelant of the engine referred to, to be installed in this launch, and his ownership of the launch at the time, stands admitted by his answer, as does also the allegation that he has never paid anything for the engine. The contract of sale thus admitted is a maritime contract. Nor do I find anything in the evidence which has been heard sufficient to require the finding that it related to construction, and was therefore non-maritime in its nature. So far as the parties or the subject-matter are concerned, there is no reason to doubt the court's jurisdiction. The only argument advanced in support of the motion to dismiss is that a maritime lien for the unpaid price is not established by the evidence. But the court has jurisdiction, in any event, to hear and determine this question.

The libel nowhere expressly alleges that the libelant has a lien upon the launch, nor does the answer anywhere expressly deny it; but the denials in the answer cover those allegations in the libel necessary to be proved in order to establish the lien, and are sufficient to raise the question. The lien is claimed to exist under the act of Congress approved June 23, 1910 (36 Stat. 604, c. 373 [U. S. Comp. St. Supp. 1911, p. 1192]). Section 1 provides that "any person furnishing repairs, supplies, or other necessaries * * * to a vessel * * * upon the order of the owner * * * or of a person by him * * * authorized," has a lien upon the vessel which may be enforced by a proceeding in rem. Section 5 provides that the act shall supersede the provisions of all state statutes conferring similar liens to be so enforced.

An allegation that the launch was in New York when the engine was sold, to be installed in her is also admitted by the answer. The third article of the libel alleges that after the sale the libelant "did install the engine upon the boat at New York," besides furnishing materials and labor in connection therewith. These allegations the answer denies. The facts as I find them were that the libelant, under instructions from the respondent, shipped the engine by public conveyance to New York, and that the respondent there received it, paid the freight on it, had it sent over to the yard in Brooklyn where the launch was, and had it there installed in the launch. I find, also, that certain pipe and fittings, engine oil and gasoline, not included in the sale of the engine were afterward furnished to the launch in a similar manner. After shipping the engine as above, the libelant had nothing further to do with it until after it had been installed and the launch put into the water with it on board. I find, further, that the engine was accepted by the respondent as satisfactory after it had been so installed, and has since remained on board the launch.

If the libelant had in fact installed the engine at New York in this launch, as its libel alleges, its lien for the unpaid price could not have been disputed. Can it be said, on the facts above found, that it has furnished the engine to the launch within the meaning of the statute, so as to be entitled to the lien thereby given? Unless it has a lien, I see no way in which the libelant can recover in this suit, even if the defendant is personally liable for the agreed price of the engine. While in some cases the court might, though finding that the libelant was not entitled to a lien, permit him to amend and recover in personam, it can only do this when the admiralty rules permit the joinder of proceedings in rem and in personam for the cause of action. Rule 12 (29 Sup. Ct. xi) does not permit such a joinder when the suit is by a materialman for supplies, repairs, or other necessaries. See The Monte A (D. C.) 12 Fed. 331; The Lowlands (D. C.) 147 Fed. 986; The Nora (D. C.) 181 Fed. 845.

In the Vigilancia (D. C.) 58 Fed. 698, and in The Cimbria (D. C.) 156 Fed. 378, 382, the lien claimant had to show, under the law as it stood prior to the act of 1910, not only that he had furnished the materials or supplies to the vessel, but that he had furnished them to her at a port outside the state to which she belonged. Under that act, the port at which the materials or supplies are furnished becomes immaterial. Whatever might be the decision if the rights of parties other than the owner were to be affected by it, I am of opinion that an owner who has ordered materials or supplies for his vessel, has ordered them delivered to a carrier in order that they may reach

her, has actually put them on board the vessel for which they were ordered after receiving them from the carrier, and has them on board her when the libel is filed, cannot be heard to say they have not been furnished to her in order to defeat a lien for them under the statute. The Gracie Kent (D. C.) 169 Fed. 893. I hold, therefore, that the libelant has a lien for the price of the engine and materials.

Ely has not only answered the libel, but has set up in his answer a counterclaim for damages alleged to have been caused by the libelant's failure to furnish an engine such as contracted for within the agreed time. He asks a decree against the libelant to an amount exceeding what is claimed in the libel. Of course, he can have no recovery against the libelant without a cross-libel. If a claim for unliquidated damages like these can be set off in such a suit as this, it can at most extinguish the libelant's demand. On the evidence, however, I am unable to consider any claim for damages established. I think the owner is shown to have waived the failure to furnish the engine at the time originally agreed. That it worked well on board the vessel so long as it was properly operated I think also clear. If it broke down afterward, the respondent fails to show that it broke down by reason of anything for which the libelant is responsible. It was at the time being operated by an employé of the respondent, whose competency to run it is open to serious question.

The libelant is entitled to recover $1,551, the agreed price of the engine, and $60.35, the value of the other articles furnished in connection therewith. $83.50 more is claimed for the services of a man sent to New York by the libelant, upon the respondent's request, to see that the engine was in proper working order on board, bring her with the engine on board to Boston, and instruct the respondent's employés as to its operation. On the whole, I think this claim also is within the statute. The libelant may, therefore, have a decree for $1,694.85, with interest and costs.

Louis C. Doyle, of Boston, Mass. (Walter I. Badger, of Boston, Mass., on the brief), for appellant.

Linus C. Coggan, of Boston, Mass. (George L. Dillaway and Coggan & Coggan, all of Boston, Mass., on the brief), for the appellee.

Before COLT and PUTNAM, Circuit Judges, and BROWN, District Judge.

PUTNAM, Circuit Judge. [1, 2] This is a libel in admiralty, filed in view of the first section of the Act of June 23, 1910, c. 373, 36 Stat. 604 (U. S. Comp. St. Supp. 1911, p. 1192), as follows:

"Any person furnishing repairs, supplies, or other necessaries, including the use of dry dock or marine railway, to a vessel, whether foreign or domestic, upon the order of the owner or owners of such vessel, or of a person by him or them authorized, shall have a maritime lien on the vessel, which may be enforced by a proceeding in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."

The libel was filed in rem for the agreed price of a gasoline engine installed in a launch owned by Ely, the appellant, on a contract with him. The decree was in favor of the libelant. Ely admits in his answer that the libelant sold him, on or about April 4, 1911, the engine in question, and that it was to be installed in the launch then at New York. After some delay the engine was so installed. It cannot be satisfactorily questioned on the proofs in the record that the engine was sold to the owner of the launch for the purpose of being installed in the launch, and that it was in fact so installed, and was put in use, and remained in her continuously so far as the record

shows her history. The engine was installed in the home port of the owner; but, under the statute cited, this is no longer a matter of importance. Beyond that, all the statute requires is that whatever was furnished should have been furnished on the order "of the owner"; and it also provides that, in order that a lien therefor may be enforced in rem, "it shall not be necessary to allege or prove that credit was given to the vessel." Of course, this does not bar proof that whatever was furnished was furnished on the mere credit of the owner, and in no sense on the credit of the vessel; but it meets the presumption that there is no lien for materials furnished on the order of the owner, as there is a presumption in favor of a lien when the articles are ordered by the master under appropriate circumstances. The purpose of the statute in these respects will be illustrated by an examination of The Iris, 100 Fed. 104, 40 C. C. A. 301, Cuddy v. Clement, 113 Fed. 454, 51 C. C. A. 288, and the same case in 115 Fed. 301, 53 C. C. A. 94, and Berwind-White Coal Mining Co. v. Metropolitan S. S. Co. (C. C.) 166 Fed. 782, and the same case in the Circuit Court of Appeals in 173 Fed. 471, 97 C. C. A. 477, with a further reference thereto on the denial of a petition for certiorari in 215 U. S. 600, 30 Sup. Ct. 400, 54 L. Ed. 343. All the difficulties appearing in those cases with regard to the burden of proof, or to the presumptions as to supplies ordered by the owner, and with reference to the question whether credit was given to the vessel, are met so far as this case is concerned by this statute, and need not be explained by us in detail, except by citing the opinion of the learned judge of the District Court now appealed from.

So far as the maintenance of libel is concerned, the only substantial issue brought to our attention is whether what was furnished was in the way of construction or in the way of repairs. If the record was in a more specific form as to this question, we probably would be able to solve it by referring to the facts and the result reached in The Iris, which was a case largely of reconstruction, and of fitting a vessel for a new trade; but it is enough for us to say that this record does not show the facts definitely enough to enable us to determine whether the engine was furnished in the line of construction or in line of repairs or improvements. This leaves the case on this point, therefore, where the District Court left it.

What remains are questions of recoupment—one for alleged delay in delivering the engine, and the other for some defect which developed contrary to the warranty given by the libelant. The first claim was disposed of by the learned judge of the District Court as a pure question of fact, as to which we cannot differ.

[3] The proposition as to the warranty arises out of the usual provision of a contract for the construction of an engine, that all materials and workmanship should be first-class. As to this the learned judge of the District Court says that Ely failed to show that the engine broke down by reason of anything for which the libelant was responsible. It is claimed that the breakage was on the first trip, with Ely aboard, because of the failure of the automatic oiler

to work. The accident occurred as the launch was leaving Portland harbor. The man who had charge of the boat had her towed back into Portland, and wrote for assistance. It is a matter of public knowledge that at Portland marine repairs can be made very promptly, and there is nothing in the record to show that these repairs were not of a character which could be properly made at that port at very small expense. Therefore, so far as we can discover, any claim on this account, if there is one, was a matter for a suit at law, and not for a proceeding in admiralty, which ordinarily, except with regard to the protection of mariners, deals only with substantial matters. This is the rule both in equity and admiralty. Munson v. Steamship Co., 102 Fed. 926, 928, 43 C. C. A. 57; Saxlehner v. Siegel Cooper Co., 179 U. S. 42, 21 Sup. Ct. 16, 45 L. Ed. 77.

The decree of the District Court is affirmed, with interest, and the appellee recovers its costs of appeal.