**A/S FALKEFJELL**

v.

**ARNOLD BERNSTEIN SHIP-PING CO. Inc.**

United States District Court, S. D. New York.

Nov. 24, 1953.

See also 88 F.Supp. 560.

Haight,. Deming, Gardner, Poor & Havens, New York City (Tallman Bissell, New York City, of counsel), for libellant.

Hunt, Hill & Betts, New York City (John W. Crandall and Robert M. Donohue, New York City, of counsel), for respondent.

CONGER, District Judge.

The cause was tried upon an agreed statement of facts which follows and which I adopt as my findings of fact herein:

"1. The libelant was and still is a corporation organized and existing under the laws of the Kingdom of Norway, with its office and place of business at Oslo, Norway, and at all material times was the owner of the Norwegian s/s Tindefjell.

"2. The respondent was and still is a New York corporation with offices at 17 Battery Place, New York 4, N. Y.

"3. On or about January 16, 1940, libelant and respondent entered into a contract of charter whereby libelant chartered its s/s Tindefjell to respondent for a voyage from a safe port or ports, Northern range of the U.S. (East coast), to a safe port or ports, Narvik/Gothenburg Range.

"A photostatic copy of said charter is attached hereto, marked 'Exhibit A.'

"Said charter provided in part as follows:

"'13. The Captain shall sign Bills of Lading or Master's receipts as and when presented, without prejudice or reference to this Charterparty.'

"Respondent at the time of signing the said charter was in fact agent for North Atlantic Steamship Corporation, later changed to General Atlantic Steamship Corporation, but did not disclose the

name of its principal in signing the said charter.

"4. It was subsequently agreed between libelant and respondent that the respondent was authorized to sign bills of lading on the Master's behalf.

"5. The s/s Tindefjell proceeded to New York, where a general cargo was loaded on the vessel and a number of bills of lading were delivered to shippers who had been solicited to ship on the vessel.

"6. On or about January 27, 1940, respondent through its employee, signed a bill of lading which recited, that 197 bales of cotton waste had been received on board the s/s Tindefjell. The bill of lading was signed as follows:

" 'Dated in New York Jan. 27, 1940 For and on behalf of the Master by North Atlantic Steamship Corporation, Arnold Bernstein Shipping Co., Inc., Agents

By ———————————————
(Signature illegible)'

"The said bill of lading is attached hereto, marked 'Exhibit B.'

"7. In actual fact, 96 bales of cotton waste of the shipment, evidenced by said bill of lading, had not been loaded on the vessel.

"8. The mistake in loading was due wholly to an error on the part of one of the respondent's employees.

"9. Said bill of lading was issued to the shipper named therein and was later transferred in good faith and for value to the consignee of the cargo.

"10. When the s/s Tindefjell arrived at Gothenburg and was not able to deliver, and did not deliver, all the bales called for by the bill of lading, the consignee brought suit in the Gothenburg Municipal Court.

"11. On or about November 28, 1940, the Swedish Court entered a judgment in favor of the consignee in the amount of Swedish Kr. 24114.9, plus interest at 6%, plus costs of Swedish Kr. 675.

"12. This judgment has been satisfied by the libelant.

"13. After the termination of the occupation of Norway by the Germans in 1945, libelant demanded that respondent arbitrate the matter presently in dispute.

"14. Respondent refused to arbitrate this claim and, by order or decree entered June 1, 1948, Judge Goddard held that the claim asserted in this libel was not within the arbitration clause in the charterparty and that the respondent was not obliged to submit the same to arbitration, as a consequence of which libelant brings this suit.

"15. It is further agreed that, if libelant is entitled to recover from the respondent, a decree may be entered against the respondent, and a reference had to a commissioner to be appointed by the Court for determination of libelant's damages."

Respondent contends in its answer (1) that when it executed the charterparty in question it was in fact acting as the agent for North Atlantic Steamship Corporation although the name of respondent's principal did not appear in the charter and (2) the bill of lading in question was executed by the respondent expressly as agent for North Atlantic Steamship Corporation and that the short shipment of the 96 bales was due to an error of one of respondent's employees. It seems to me the issue is framed by this latter contention (2).

There seems to be a difference of opinion among the attorneys for the parties as to just what libellant's remedy here is, if any. Respondent's attorney insists that libellant's only claim "in the final analysis is founded on the doctrine of subrogation." Libellant's attorneys reject this idea as fallacious. They say that if libellant's only right against respondent is by subrogation to the rights of the original holder of the bill of lading, libellant is placed in the anomalous position of having only a right of action against itself since the bill of lading was signed "For and on behalf of the Master", the master, being as libellant claims, its agent.

**24**

Be that as it may, if I find for libellant I certainly should so find on the cause of action which libellant thinks it has and which it here advances and that is a cause of action for indemnity arising out of respondent's presenting onboard bills of lading for goods never in fact shipped; in other words that an obligation to indemnify the libellant is implied from respondent's neglect. Yet none of libellant's authorities * supports this proposition. In all these cases the liability was sought to be imposed upon the charterers of the vessel or one otherwise a principal. In addition the recoveries in the Field Line, Elmer Demster and Kruger cases were based upon breach of charter. Here, the libellant disaffirms reliance upon the charter as indeed it must in view of Judge Goddard's decision. Petition of A/S Falkefjell, D.C.S.D.N.Y., 78 F.Supp. 282.

The cases cited by libellant indicate it is not without remedy. Some of the cases support the notion that recovery might be had against respondent's principal North Atlantic Steamship Corporation. Nevertheless, liability is here sought against respondent, clearly an agent as the bill of lading shows.

Respondent's neglect consisted of no more than a failure to perform its duties to its principal. This conduct is frequently denominated a non-feasance and does not result in liability to persons other than the agent's principal. See Mallory S. S. Co. v. Garfield, 2 Cir., 10 F.2d 664, 665; Accinanto, Limited v. Cosmopolitan Shipping Co., Inc., D.C. D.Md., 99 F.Supp. 261, 268; Restatement of Agency, § 352; 3 C.J.S., Agency, § 223, page 134.

I, therefore, find for the respondent. Settle decree.

* Field Line v. South Atlantic Steamship Line, 5 Cir., 201 F. 301; The Sark, D.C.E.D.La., 245 F. 909, affirmed South Atlantic S. S. Line v. Steamship Co. Sark, 5 Cir., 211 F. 1022; Van Santen v. Standard Oil Co., 81 N.Y. 171; Oceanic Steam Navigation Co. v. Compania Transatlantica Espanola, 134 N.Y. 461, 31 N.E. 987; Elder Demster & Co. v. Dunn, 15 Comm.Gas. 49 (Eng.); Kruger & Co. v. Moel Tryvan Ship Co., 1907 A. C. 272 (Eng.); Groves & Sons v. Webb, 13 Aspinwell M. C. 386 (Eng.); Dawson Line, Ltd. v. Aktiegesellshaft Adler, 1 K.B. 433.